UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY AND LEA ETTS,

               Plaintiffs,

vs.

DEUTSCHE BANK NATIONAL
TRUST COMPANY, et al.,

               Defendants.

_____/

Civil Action No.
4:13-cv-11588

HON. MARK A. GOLDSMITH

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (DKTS. 14, 15)

### I. INTRODUCTION

This is one of many foreclosure cases pending in this district, although this case presents a unique set of facts. Plaintiffs Troy and Lea Etts allege that Defendants Deutsche Bank National Trust Company (as Trustee for Securitized Asset Backed Receivables LLC Trust 2004-NC1, Pooling and Servicing Agreement Dated as of April 1, 2004), Ocwen Loan Servicing, LLC, and Randall S. Miller & Associates P.C. acted wrongfully in their foreclosure of Plaintiffs' property. Plaintiffs' claims revolve around three central issues: (1) whether the foreclosing parties held a valid assignment of the mortgage given that the assignor mortgagee previously filed for bankruptcy and transferred its assets to a liquidating trust; (2) whether a Loan Workout Plan created a binding agreement between the lender and Plaintiffs; and (3) whether posting an Affidavit of Abandonment violates the Fair Debt Collection Practices Act ("FDCPA") when the property is occupied. Plaintiffs' amended complaint seeks monetary damages, injunctive relief, declaratory relief, quiet title, and to have the foreclosure sale voided as a result of the alleged fraud and misrepresentations, violations of Michigan foreclosure statutes and the FDCPA, and

1

breach of contract.  Defendants have filed motions to dismiss (Dkts. 14, 15).  For the reasons discussed below, the Court grants Defendants' motions and dismisses Plaintiffs' amended complaint (Dkt. 11) without prejudice.[1]  As described below, however, Plaintiffs may seek leave to file a second amended complaint.

## II. BACKGROUND

In November 2003, Plaintiffs Troy and Lea Etts obtained a loan from New Century Mortgage Corporation ("New Century") to refinance the purchase of their home in Temperance, Michigan.  Am. Compl. ¶¶ 7-8.  In exchange, Plaintiffs executed a mortgage in favor of New Century, which was recorded in the Monroe County Register of Deeds on December 15, 2003. Id. ¶ 8.  Plaintiffs and a representative of Deutsche Bank National Trust Company, as Trustee for Securitized Asset Backed Receivables LLC Trust 2004-NCI, Pooling and Servicing Agreement Dated as of April 1, 2004 ("Deutsche Bank"), subsequently signed a loan modification agreement.[2]  The effective date of that agreement is unclear; Plaintiffs appear to have signed the document in November 2006, but the Deutsche Bank representative appears not to have executed it until February 21, 2008.  See Am. Compl. ¶ 8; see also Loan Modification Agreement, Ex. 4 to Def. Deutsche Bank's Mot. to Dismiss (Dkt. 14-5).

Meanwhile, New Century — the original mortgagee — filed for Chapter 11 bankruptcy protection in April 2007.  Am. Compl. ¶ 14.  Approximately one year later, a Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors ("Plan") was filed in that bankruptcy case.  Id. ¶ 15.  The Plan established the New

---

[1] Because the Court dismisses Plaintiffs' claims for the reasons discussed herein, the Court does not address all of the arguments Defendants raise in their motions, except to the extent those arguments are necessary to this decision.

[2] Neither the amended complaint nor the documents currently before the Court reflect how Deutsche Bank and/or the trust obtained any interest in the note and/or mortgage before the loan modification agreement was signed.

Century Liquidating Trust ("Liquidating Trust"), with Alan M. Jacobs serving as Trustee.  Id. According to Plaintiffs, pursuant to Section 8.E.1 of the Plan, all of New Century's assets were conveyed to the Liquidating Trust as of August 1, 2008, and New Century retained no further interest in or with respect to these assets.  Id. ¶ 17.  Plaintiffs claim that their mortgage was one of the assets transferred to the Liquidating Trust.  Id. ¶ 19.

In 2009, Plaintiffs faced financial difficulty due to Troy Etts's health.  Id. ¶ 9.  Plaintiffs consequently requested that their then-servicer, Litton Loan Servicing LP ("Litton"), grant them a loan modification.  Id.  After being provided with a "Loan Workout Plan" — i.e., a trial period application — Plaintiffs made the three trial-period payments, but were ultimately denied a permanent modification in the fall of 2009.  Id. ¶ 10.  Litton claimed the denial was due to missing documentation, although Plaintiffs allege they produced all of the requested documents on multiple occasions.  Id.

Plaintiffs subsequently defaulted on their loan repayment obligations.  Over the next few years, Plaintiffs continued to seek assistance from Litton and, more recently, Litton's successor, Defendant Ocwen Loan Servicing, LLC ("Ocwen").  Id.  Nevertheless, Plaintiffs were not granted another permanent modification.

In July 2012, New Century Mortgage Corporation, by its attorney-in-fact Ocwen Loan Servicing, LLC, executed an assignment of Plaintiffs' mortgage to Deutsche Bank.  Id. ¶ 22. The assignment was recorded on July 27, 2012 in the Monroe County Register of Deeds.  Id. Deutsche Bank foreclosed on Plaintiffs' property and purchased it at the foreclosure sale on October 25, 2012.  Id. ¶ 11.  Plaintiffs allege that they first learned of the foreclosure sale when an Affidavit of Abandonment was posted on their front door on November 5, 2012.  Id. ¶ 12. Plaintiffs did not redeem the property within the statutorily prescribed timeframe.

Plaintiffs filed the instant case in the 38th Judicial Circuit Court on February 28, 2013. See Compl., Ex. 1 to Defs. Notice of Removal (Dkt. 1).   After the case was removed to this Court (Dkt. 1), Plaintiffs filed an amended complaint (Dkt. 11).  Plaintiffs allege six causes of action: (1) fraud and misrepresentation; (2) violation of MCL § 600.3204(3); (3) violation of MCL § 600.3204[(1)](c),(d); (4) breach of contract; (5) violation of the FDCPA; and (6) action to quiet title.   These claims revolve around three central issues: (1) alleged defects in the mortgage assignment to Deutsche Bank (i.e., that New Century could not assign the mortgage following its bankruptcy and that any prior assignment did not comply with the terms of the Pooling and Servicing Agreement ("PSA")); (2) assertions that the Loan Workout Plan formed a binding agreement between the parties; and (3) purported falsities in the Affidavit of Abandonment because the home was occupied.

Deutsche Bank and Ocwen filed a combined motion to dismiss (Dkt. 14).  Defendant Randall S. Miller & Associates P.C. — which acted as foreclosure counsel — filed a separate motion to dismiss (Dkt. 15).  The motions were held in abeyance while the parties attempted to resolve the dispute through facilitation, which ultimately was unsuccessful.   Plaintiffs subsequently filed responses to the motions (Dkts. 22-24), Defendants filed replies (Dkts. 25-26), and the Court heard oral argument on November 14, 2013.

### III. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In evaluating a motion to dismiss pursuant to Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief."  Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010)

4

(internal brackets, quotation marks, and citations omitted).  To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim.  Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).  A complaint will be dismissed unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief."  Id. at 679.

In ruling on a motion to dismiss, the Court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, and matters on which a court may take judicial notice.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  "[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document."  Williams v. CitiMortgage, Inc., 498 F. App'x 532, 536 (6th Cir. 2012) (citation omitted).

### IV. ANALYSIS

As mentioned, Plaintiffs' amended complaint can be categorized into three sets of allegations.  First, Plaintiffs' claims for quiet title and for violations of Michigan's foreclosure statutes, and part of the claims for fraud and violations of the FDCPA, concern the assignment to Deutsche Bank and, correspondingly, Deutsche Bank's authority to foreclose.  Second, the claim for breach of contract, as well as the other part of the fraud claim, focus on the Loan Workout Plan and the denial of a permanent loan modification in 2009 for lack of documentation.  Lastly, Plaintiffs' remaining claim under the FDCPA concerns the posting of the allegedly false Affidavit of Abandonment.  The Court addresses each issue in turn.

**A.    Plaintiffs' Claims Based on the Assignment to Deutsche Bank**

Plaintiffs first allege that Deutsche Bank lacked the authority to foreclose because the assignment of the mortgage to Deutsche Bank was invalid.  Defendants argue that Plaintiffs lack

"standing" to challenge the foreclosure because Plaintiffs failed to redeem the property within the statutorily prescribed amount of time.  See Deutsche Br. at 5-7 (Dkt. 14); Miller Br. at 3-4 (Dkt. 15).  Defendants assert that "[b]ecause Plaintiffs failed to redeem the [p]roperty before the redemption period expired, Deutsche Bank became vested with all right, title and interest in the [p]roperty by operation of law.  At that point, Plaintiffs, as former owners, lost standing to assert claims with respect to the [p]roperty."  Deutsche Br. at 6; see also Miller Br. at 3-4.  Defendants also contend that even if Plaintiffs have continued standing to challenge the foreclosure sale itself, Plaintiffs cannot challenge contracts to which they were not a party, i.e., the assignment and the PSA.  See Deutsche Br. at 7-10.

Plaintiffs respond that "[g]iven their continuing claim to ownership of their home and the defect in the process used in an effort to take their property, . . . Plaintiffs[] have established their standing."  Pls. Resp. at 7 (Dkt. 22).  Plaintiffs highlight a number of cases from the Sixth Circuit, this district, and the Western District of Michigan recognizing that a plaintiff retains "standing" to challenge a foreclosure sale even after the statutory redemption period expires.  Id. at 5-7.

At the outset, the Court notes that it is unclear whether Defendants are challenging Plaintiffs' standing under Article III of the Constitution, under the Michigan statutory scheme, or both.  To the extent Defendants challenge Plaintiffs' Article III standing based on Plaintiffs' failure to redeem, their argument clearly fails.  "Article III standing is established when there is a 'concrete,' 'particularized,' and 'actual injury' that 'is fairly traceable to the challenged action of' the defendants and capable of being 'redressed by a favorable decision.'"  Whitehead v. Fed. Nat'l Mortg. Ass'n, 12-13840, 2013 WL 5353050, at *2 (E.D. Mich. Sept. 24, 2013) (quoting Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc., 528 U.S. 167, 179 (2000)).

Courts repeatedly hold that the expiration of the redemption period does not preclude a plaintiff's Article III standing to challenge the foreclosure sale.  See, e.g., id.; Carmack v. Bank of New York Mellon, 534 F. App'x 508, 511 n.2 (6th Cir. 2013) ("To the extent courts have referred to a plaintiff's failure to meet this redemption standard as one of standing, it is limited to standing under Michigan law, not Article III."); El-Seblani v. IndyMac Mortg. Servs., 510 F. App'x. 425, 428 (6th Cir. 2013) ("There is no serious dispute that El-Seblani has Article III standing to contest the foreclosure sale.").

To the extent Defendants are contesting Plaintiffs' standing to challenge Defendants' right to foreclose under Michigan law, their argument fares no better, although for different reasons.  "Non-judicial foreclosures, or foreclosures by advertisement, are governed by statute under Michigan law."  Conlin v. Mortg. Elec. Registration Sys., 714 F.3d 355, 359 (6th Cir. 2013).  Under Michigan law, "[o]nce [the] statutory redemption period lapses, . . . the mortgagor's right, title, and interest in and to the property are extinguished."  Id. (quotation marks and citation omitted).  In Overton v. Mortgage Electronic Registration System, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009), the defendants argued that plaintiff had "no standing because he no longer had any interest in the property once the redemption period expired."  The court found these "arguments . . . legally and factually sound" because the filing of the lawsuit did not toll the statutory redemption period.  Id.  As a result, some courts began labeling the loss of right, title, and interest as an issue of "standing."  See, e.g., Awad v. Gen. Motors Acceptance Corp., No. 302692, 2012 WL 1415166, at *4 (Mich. Ct. App. Apr. 24, 2012).

However, a more recent line of authority — including unpublished decisions from the Sixth Circuit — has concluded that these cases "do[] not turn on the standing doctrine."  El-

7

Sablani, 510 F. App'x at 429 (internal quotation marks and citations omitted).  In El-Sablani, the

Sixth Circuit explained:

> Since a typical lawsuit cannot be completed before the expiration
> of the redemption period, Michigan courts allow "an equitable
> extension of the period to redeem from a statutory foreclosure sale
> in connection with a mortgage foreclosed by advertisement and
> posting of notice" in order to keep a plaintiff's suit viable provided
> he makes "a clear showing of fraud, or irregularity" by the
> defendant.

Id. at 428 (quoting Schulthies v. Barron, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)).

Therefore, expiration of the redemption period does not necessarily bar standing.  Rather, as the

Sixth Circuit has explained, "It is more accurate to say that the 'fraud or irregularity claims' in

Overton . . . lacked sufficient merit to meet the high standard imposed by Michigan law on

claims to set aside a foreclosure sale."  Id. at 429.

This Court has recognized this distinction.  In Price v. Federal Home Loan Mortgage

Corporation, No. 12-12012, 2013 WL 980278, at *3 (E.D. Mich. Mar. 13, 2013), this Court

rejected the argument that plaintiff lacked "standing," finding that "the proper analysis is that,

although [the p]laintiff has standing, she has failed to allege any facts supporting a plausible

claim that she is entitled to an equitable extension of her redemption period."  Id.  Accordingly,

the Court will consider whether Plaintiffs have sufficiently alleged a claim that would entitle

them to an equitable extension of the redemption period and setting aside of the foreclosure sale.

The standard for extending the redemption period and setting aside the foreclosure sale is

stringent.  El-Seblani, 510 F. App'x at 429.  "[S]tatutory foreclosures will only be set aside if

'very good reasons' exist for doing so."  Kubicki v. Mortg. Elec. Registration Sys., 807 N.W.2d

433, 434 (Mich. Ct. App. 2011) (citation omitted).  Under this high standard, "[t]he law in

Michigan does not allow an equitable extension of the period to redeem from a statutory

foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity." Schulthies, 167 N.W.2d at 785. And not just any showing of fraud or irregularity will suffice; rather the misconduct must "relate to the foreclosure procedure itself." Conlin, 714 F.3d at 360 (citation omitted).

Plaintiffs argue that they have sufficiently alleged fraud or irregularity. Pls. Br. at 8-10. In particular, Plaintiffs claim that New Century lost control of its assets — including the mortgage at issue — as a result of the bankruptcy. According to Plaintiffs, only Alan M. Jacobs — the Trustee for the Liquidating Trust — could have assigned the mortgage to Deutsche Bank in July 2012; Ocwen, acting as attorney-in-fact for New Century, could not have done so because New Century itself did not hold title. Id. In addition, Plaintiffs contend that, to the extent Deutsche Bank argues the mortgage and/or note were transferred to the trust prior to the bankruptcy, the transfer was invalid because it violated the terms of the PSA. Id. at 10-11. Therefore, Plaintiffs argue Deutsche Bank lacked the authority to foreclose, in violation of Mich. Comp. Laws §§ 600.3204(3) and .3204(1)(c), (d). Defendants respond that Plaintiffs were not parties to either the assignment or the PSA, and thus they cannot attack the validity of these agreements. See Deutsche Br. at 7-10.

Pursuant to Mich. Comp. Laws § 600.3204(1), "a party may foreclose a mortgage by advertisement if . . . (c) The mortgage containing the power of sale has been properly recorded; [and] (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." Similarly, Mich. Comp. Laws § 600.3204(3) requires that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage."

9

Plaintiffs recognize that the assignment of the mortgage to Deutsche Bank was recorded before Deutsche Bank foreclosed.  See Am. Compl. ¶ 22.  However, they challenge whether recordation was proper given New Century's, i.e, the assignor's, bankruptcy.  Pls. Br. at 8.

The Sixth Circuit has addressed the requirements for sustaining a claim of wrongful foreclosure based on an allegedly invalid mortgage assignment.  In Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 399 F. App'x 97, 99 (6th Cir. 2010), the plaintiff executed a mortgage loan with Lehman Brothers.  Through a series of interim, unrecorded assignments, the mortgage loan was ultimately transferred to a trust, with LaSalle Bank N.A. acting as trustee.  LaSalle recorded a document showing a direct assignment from Lehman Brothers and did not record any of the interim assignments.  LaSalle then assigned the mortgage to the defendant,  id. and the defendant recorded the assignment from LaSalle.  Id. The defendant then began foreclosure proceedings.

The plaintiff challenged the foreclosure, arguing that it violated Mich. Comp. Laws § 600.3204(3) because the recorded chain of title did not reflect the interim assignments.  Id. at 100-101.  The plaintiff also challenged the validity of the assignment to the trust, claiming the trust did not exist at the time of the transfer.  Id. at 102.

The Sixth Circuit held that even if a flaw in the assignment existed, a plaintiff "does not have standing to raise that flaw to challenge [defendant's] chain of title."  Id.  The court explained that there was "ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment."  Id. (internal quotation marks and citations omitted).  The court did recognize an exception to this general rule, however: "An obligor may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void. . . . These defenses include nonassignability of the instrument, assignee's

10

lack of title, and a prior revocation of the assignment." Id. (citing 6A C.J.S., Assignments § 132 (2010)).

Plaintiffs argue that they fit within this narrow exception. They claim that, by challenging New Century's interest in the mortgage, they are alleging nonassignability and the assignee's lack of title. Pls. Br. at 9. Even so, Plaintiffs ignore the Sixth Circuit's explanation for why these defenses provide an exception to the general rule: "Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice." Livonia, 399 F. App'x at 102; see also Carmack, 2013 WL 4529871, at *3 ("Citing Livonia, Michigan appellate courts have rejected challenges to mortgage assignments, but have recognized that such challenges may be permitted 'under limited circumstances,' ostensibly where the borrower has a valid claim that he will face double liability." (citing Bank of N.Y. Mellon Trust Co., Nat'l Ass'n v. Monsivaes, No. 310696, 2013 WL 2495045, at *3 n.4 (Mich. Ct. App. June 11, 2013) and Famatiga v. Mortg. Elec. Registration Sys., No. 304726, 2013 WL 1137186, at *2 (Mich. Ct. App. Mar. 19, 2013)). The Sixth Circuit explained that "[w]ithout a genuine claim that [a foreclosing defendant] is not the rightful owner of the loan and that [a plaintiff] might therefore be subject to double liability on its debt, [plaintiff] cannot credibly claim to have standing to challenge the" assignment. Livonia, 399 F. App'x at 102. Subsequent courts interpreting this language have looked to whether plaintiffs allege that they may be subject to a threat of double liability. See, e.g., Keyes v. Deutsche Bank Nat'l Trust Co., 921 F. Supp. 2d 749, 756 (E.D. Mich. 2013) (plaintiffs may challenge validity of assignment due to threat of double liability when "[t]he note would be in the hands of [one party] and the mortgage in the hands of [another]"); Talton v. BAC Home Loans Servicing LP, 839 F. Supp. 2d 896, 906 (E.D. Mich. 2012) ("In cases where the foreclosing party was not the holder of the note but only a

11

holder of the mortgage, a plaintiff might have a genuine claim that he or she might therefore be subject to double liability on his or her debt." (brackets, internal quotation marks, and citation omitted)).

Here, Plaintiffs have not alleged that they face a threat of liability from any entity other than Deutsche Bank.  For example, although Plaintiffs argue the mortgage could not be assigned without Mr. Jacobs's permission, they fail to allege that Mr. Jacobs (or any other individual or entity) has sought or threatens to seek payment from the Plaintiffs.  Indeed, Plaintiffs have not made payments on their loan since 2010, and the purportedly problematic assignment occurred in July 2012; yet Plaintiffs do not claim to have been subjected to a threat of double liability at any point during or since this time.  Cf. Maraulo v. CitiMortgage, Inc., No. 12-10250, 2013 WL 530944, at *7 (E.D. Mich. Feb. 11, 2013) (no threat of double liability where assignor went out of business).  Indeed, based on statements made during oral argument, it appears that this whole issue may be resolvable with a letter or declaration from Mr. Jacobs regarding the July 2012 assignment, who holds an interest in the mortgage and note, and/or his intention with respect to Plaintiffs' liability.  Therefore, as currently alleged in the amended complaint, Plaintiffs do not have standing to challenge the July 2012 assignment to Deutsche Bank.

Moreover, the Michigan Supreme Court recently announced a similar prejudice requirement to sustain claims of a Mich. Comp. Laws § 600.3204 defect, including those arising under § 600.3204(1) and (3).  In Kim v. JPMorgan Chase Bank, N.A., 825 N.W.2d 329, 330 (Mich. 2012), plaintiffs obtained a loan from Washington Mutual Bank (WaMu), and, in exchange, executed a mortgage on the property.  After WaMu collapsed in 2008, the Federal Deposit Insurance Corporation ("FDIC") acted as receiver for WaMu's holdings.  The FDIC subsequently transferred nearly all of WaMu's assets to the defendant pursuant to a purchase and

assumption agreement.  Id. at 330-331.  In 2009, the defendant foreclosed on plaintiffs' property, before the assignment had been recorded.  Plaintiffs sued, claiming a violation of Mich. Comp. Laws § 600.3204(3).  Id.

The Michigan Supreme Court held that "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void ab initio."  Id. at 337.  The court remanded for the trial court to determine whether the sale should be voidable, but noted that "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with MCL 600.3204.  To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute."  Id. (internal citations omitted); Conlin, 714 F.3d at 361-362 ("Post-Kim, Michigan mortgagors seeking to set aside a sheriff's sale under § 600.3204 will have to demonstrate prejudice (e.g., double liability).").  See generally Carmack, 2013 WL 4529871, at *3-4 (applying Kim to claims under § 600.3204(1)).

Plaintiffs' amended complaint does not contain any such specific allegations of prejudice.  Plaintiffs do not claim that they "would have been in a better position to preserve their interest in the property absent" the purportedly defective assignment.  Kim, 825 N.W.2d at 337.  For example, Plaintiffs do not allege that they would have been able to redeem the property, make their monthly payments, or prevent foreclosure but for the July 2012 assignment.  Nor do Plaintiffs allege that they face a threat of double liability as a result of the assignment, as described above.

Accordingly, the Court dismisses without prejudice counts two (violation of MCL § 600.3204(3)), three (violation of MCL § 600.3204[1](c)(d)); and six (action to quiet title).  The Court also dismisses without prejudice counts one (fraud and misrepresentation) and five

(violation of the FDCPA) to the extent those counts also are based on the purportedly invalid assignment.

Nevertheless, it is conceivable from Plaintiffs' existing claims that they could allege a set of facts sufficient to establish prejudice and a threat of double liability arising out of the assignment.   Based on statements made at oral argument, however, it does not appear that Plaintiffs are in a position to raise these allegations at this time.   Accordingly, Plaintiffs may file a motion for leave to amend — with a proposed Amended Complaint attached (see E.D. Mich. Local Rule 15.1) — within 21 days of the date of this Order.   If Plaintiffs do not file a motion for leave to amend within this timeframe, then the dismissal of the claims listed above will be converted automatically into a dismissal with prejudice.[3]

## B.     Plaintiffs' Claims Based on the Loan Workout Plan

Plaintiffs also bring claims for breach of contract and fraud based on a 2009 Loan Workout Plan offered by Defendant Ocwen's predecessor, Litton.   In their amended complaint, Plaintiffs alleged, as follows: "On June 1, 2009, Defendant Ocwen's predecessor[,] Litton, presented Plaintiffs with a [']Loan Workout Plan,' . . . which provided that compliance with its terms would result in a Loan Modification Agreement."   Am. Compl. ¶ 50.   Plaintiffs further claimed that, "[w]hile conceding that Plaintiffs made all required trial period payments, . . . Litton . . . breached the agreement when, on September 25, 2009, it denied the loan modification for non-receipt of 2008 tax returns and schedules, an IRS Form 4506-T and two signed copies of

---

[3] The Court reminds Plaintiffs that if they choose to seek leave to amend, conclusory statements about prejudice or a "fear [of] double recovery" are insufficient absent some factual basis for these claims.  See Griffin v. JPMorgan Chase Bank, N.A., No. 13-10002, 2013 WL 6587870, at *4 n.8 (E.D. Mich. Dec. 16, 2013); Stroud v. Bank of America, N.A., No. 13-10334, 2013 WL 3582363, at *7 (E.D. Mich. July 12, 2013); see also Fed. R. Civ. P. 11(b)(3) (attorneys must certify that factual contentions "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery").

14

the Plan,[] when in fact such documents had been submitted as evidenced by fax confirmation receipts and Plaintiffs' cover sheet for the submission of these documents."  Id. ¶ 51; see also id. ¶¶ 35-36 (alleging that Litton "misrepresented material facts and made fraudulent representations in denying Plaintiffs a loan modification" and that "[s]uch denial of a modification was done in violation of the June 1, 2009 'Loan Workout Plan,' . . . which provided that compliance with its terms would result in a Loan Modification Agreement").  Plaintiffs attached a purported copy of the 2009 Loan Workout Plan to their amended complaint.  See Loan Workout Plan, Ex. I. to Am. Compl. (Dkt. 11-13).

After carefully reviewing the pleadings and motion papers, the Court concludes that Plaintiffs have withdrawn this claim as pled in the amended complaint.  As discussed, Plaintiffs' claims for breach of contract and fraud (in part) were based on the allegation that Litton's "denial of [the loan] modification was done in violation of the June 1, 2009 'Loan Workout Plan,' . . . which provided that compliance with its terms would result in a Loan Modification Agreement." Am. Compl. ¶ 36 (emphasis added).  The Court interpreted this language to mean that (1) the Loan Workout Plan purportedly guaranteed a loan modification if Plaintiffs complied with the Plan's terms, and (2) this promise was breached when Plaintiffs were not provided a loan modification, despite having complied with the Plan.

The Court's interpretation was further bolstered by Plaintiffs' response to Defendants' motions.  For example, in their opposition to Defendant Deutsche Bank's and Ocwen's motion to dismiss, Plaintiffs claimed that they "certainly were harmed in not securing the modification Defendant Ocwen's predecessor represented would result from their compliance with the Loan Workout Plan terms."  Pls. Resp. at 13.  Plaintiffs also emphasized language from the Loan Workout Plan stating that the lender "will provide . . . a Loan Modification Agreement" if

15

Plaintiffs complied with the Loan Workout Plan; Plaintiffs claimed that, as a result of their compliance, "a contract was formed to modify [the] loan." Id. at 14-15.  Finally, Plaintiffs cited cases — mostly from other jurisdictions — concluding that the same language in other such plans (sometimes referred to as a "trial period plan" or "TPP") created a binding agreement, wherein the lender promised a loan modification if the borrowers complied with the Loan Workout Plan's terms.   See id. at 15-16; see also Pls. Supp. Br. at 1-2 (Dkt. 24).  Indeed, Plaintiffs highlighted the following language from Bolone v. Wells Fargo Home Mortg., Inc., et al., 858 F. Supp. 2d 825, 835 (E.D. Mich. 2012): "[R]eviewing the language in the TPP, the Court is unconvinced that Wells Fargo was not obligated to provide Plaintiff a permanent loan modification if Plaintiff satisfied all conditions of the TPP."  Pls.' Supp. Br. at 2.

To the extent any question remained regarding what, exactly, Plaintiffs believed to have been promised, Plaintiffs' counsel stated at oral argument that "the breach of the TPP in and of itself states a claim, Litton should have allowed these folks to have a permanent loan modification."  See Hr'g Tr. at 4 (Dkt. 33).[4]  Accordingly, Plaintiffs' claim was that Litton wrongfully denied them a loan modification, which should have been offered because Plaintiffs allegedly complied with their obligations under the Loan Workout Plan.

In more-recent briefing, however, Plaintiffs' claim shifted from Litton's failure to provide a promised loan modification, to Litton's failure to even consider Plaintiffs for permanent modification.  This change may have been prompted by the Sixth Circuit's unpublished decision in Goss v. ABN AMRO Mortg. Group, -- F. App'x --, 2013 WL 6698041, at *1 (6th Cir. Dec. 20, 2013), which was issued after the Court took this matter under advisement.  In that case, like here, the plaintiff was sent a trial period plan, which stated: "I

---

[4] Plaintiffs use the term "TPP" and "Loan Workout Plan" interchangeably.  See, e.g., Pls. Supp. Br. at 1 (Dkt. 31).

understand that after I sign and return two copies of this Plan to the Lender the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.  The Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature."  The plaintiff signed the document, but the mortgage servicer did not.  Id.    The servicer subsequently determined that the plaintiff did not qualify for a modification and began foreclosure proceedings.  The plaintiff sued, claiming, among other things, breach of contract to provide a loan modification.  Id.

A panel for the Sixth Circuit held that the trial period plan was "not a binding contract because it was not signed by both" the plaintiff and the servicer.  Id. at *3.  The panel highlighted that the trial period plan, by its plain terms, made clear that it was not binding unless signed by the lender.  Id. at *5.  Instead, the panel concluded that the document was simply "an application for an offer to modify the loan agreement, provided certain conditions were met."  Id.  Given that the Goss decision concerned identical language to the Loan Workout Plan here, this Court requested supplemental briefing from the parties on the "decision's impact, if any, on the instant case."  1/24/14 Order (Dkt. 30).

In their supplemental brief (Dkt. 31), Plaintiffs argued that the Goss case is distinguishable from the instant action.  Plaintiffs maintained that the breach-of-contract claim in Goss was based on the denial of a permanent loan modification after review of all documentation.  On the other hand, Plaintiffs claimed that the breach in the instant case was that they "were improperly denied the opportunity for the loan modification review itself when Litton falsely represented that certain documents required for the review, and previously acknowledged as received, had not been received."  Pls. Supp. Br. at 6.  In other words, Plaintiffs asserted that

17

"Litton breached its promise to <u>consider</u> the eligibility of the Etts[es] for a loan modification." <u>Id.</u> (emphasis in original).

Having reviewed the amended complaint, the briefing on the motions to dismiss, and the arguments at the motion hearing, the Court finds that Plaintiffs' theory has changed. Plaintiffs initially claimed that Litton breached the Loan Workout Plan and committed fraud when it failed to provide them with a Loan Modification Agreement, which they claim should have been issued because they complied with the Plan. Now, however, Plaintiffs claim that the violation was Litton's failure to even consider them for a Loan Modification Agreement — even though the ultimate decision may have been that Plaintiffs were not eligible. <u>See</u> Pls. Supp. Br. at 4-6 ("Litton did, however, breach its promise to review the loan for a modification"; "The TPP must be construed as an offer to <u>consider</u> a modification of the loan if the borrower, as the Etts[es] carefully did here, satisfied the requirements of the Plan"). A comparison of the language of the amended complaint ("[the Loan Workout Plan] provided that compliance with its terms would result in a Loan Modification Agreement" (Am. Compl. ¶ 36)) with Plaintiffs' supplemental brief ("Thus, the TPP may appropriately be characterized as an agreement to review the documentation and satisfaction of the other requirements of the TPP and determine whether the borrower qualifies for a modification" (Pls.' Supp. Br. at 5)) highlights the shift in what Plaintiffs claim Litton did wrong: fail to provide versus fail to consider.

Accordingly, the Court finds that Plaintiffs have withdrawn their original claim that the Loan Workout Plan promised a Loan Modification Agreement, and that Litton violated that promise when it denied them a loan modification due to missing documentation. Instead, Plaintiffs now claim that the Loan Workout Plan promised that they would be <u>considered</u> for a Loan Modification Agreement, and Litton violated that promise when it did not do so based on

missing documentation. This distinction is important because it may affect the interpretation of the Loan Workout Plan, the damages at issue, relevant discovery, and other such considerations. The Court will therefore dismiss these claims from the amended complaint without prejudice. As with Plaintiffs' claims based on the purportedly invalid assignment, Plaintiffs may file a motion for leave to amend — with a proposed Amended Complaint attached (see E.D. Mich. Local Rule 15.1) — within 21 days of the date of this Order.[5]   If Plaintiffs do not file a motion for leave to amend within this timeframe, then the dismissal of the claims listed above will be converted automatically into a dismissal with prejudice. [6]

## C.      Plaintiffs' Claim Based on the Affidavit of Abandonment

Lastly, Plaintiffs bring a claim under the FDCPA, 15 U.S.C. 1692e and 1692f(6), based, in part, on Defendant Randall S. Miller's placement of an "Affidavit of Abandonment" on the property's front door following the foreclosure sale. Am. Compl. ¶¶ 57, 59-60. Plaintiffs claim

---

[5] The Court reminds Plaintiffs that any amendment must comply with both Federal Rule of Civil Procedure 8 — as interpreted by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) — and, if a fraud claim is alleged, Federal Rule of Civil Procedure 9(b). The Court warns Plaintiffs that it will not be amenable to any proposed amendment that fails to clearly and specifically articulate the factual bases for the elements of each claim, e.g., what was promised, how that promise was violated, the damages that resulted from the breach of that promise, the precise statements made, how Plaintiffs relied on those statements, the harm caused by the statements, etc. Conclusory statements reciting the elements, without any factual support, are insufficient. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[6] The Court also notes that the 2009 Loan Workout Plan attached to Plaintiffs' amended complaint may have been incomplete. The attached document references a "Section 2," which appears to contain the terms of the trial period payments Plaintiffs were to make. See Loan Workout Plan, Ex. I to Am. Compl. (Ex. 11-13). However, this section was not contained within the attached document. Because Section 2 may also control the parties' promises and reservations, analyzing Plaintiffs' claims becomes more difficult without the complete Plan. Accordingly, if Plaintiffs seek leave to amend, they should attach the full Loan Workout Plan to their amended complaint, describe what was contained within the omitted Section 2, or explain its absence.

that because the property was occupied at the time of the posting, this constituted "false, deceptive and/or misleading" conduct, and "unfair and/or unconscionable collection means," covered by the FDCPA.  Id. ¶¶ 57, 60.  Defendant Randall S. Miller responds that the FDCPA does not apply because the posting was not an attempt to collect a debt.  Miller Reply at 3 (Dkt. 26).  The Court agrees with Defendant.

The FDCPA regulates certain collection activities in relation to attempts to collect a "debt."  The FDCPA defines the term "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5). Here, the sole conduct remaining at issue is Randall S. Miller's placement of the Affidavit of Abandonment following the foreclosure sale, but Plaintiffs fail to explain how the posting of this affidavit was done in connection with an attempt to collect a debt, as defined by the FDCPA. The posting was not made in connection with an attempt to recover an alleged obligation of Plaintiffs to pay money on the underlying amount owed; the foreclosure sale had already occurred and there is no indication that Plaintiffs owed any further amounts, such as a deficiency judgment.[7]  Rather, the only effect placement of the affidavit would have would be to shorten the redemption period.  See Mich. Comp. Laws § 600.3241a.  Indeed, at least one court has concluded that similar post-sheriff's sale actions regarding the redemption period are not covered by the FDCPA because "plaintiffs had no outstanding obligation to pay money because the foreclosure proceedings were complete and the home had already been sold at a sheriff's sale."

---

[7] It appears from the public documents that no deficiency remained following the sheriff's sale. Compare Aff. of Pub., Ex 3 to Def. Miller's Mot. (Dkt. 15-1)  (amount due was $235,359.09 in August 2012) with Sheriff's Deed (property sold for $257,502.80 in October 2012). Consequently, the Court need not decide whether the FDCPA would apply in these circumstances had a deficiency existed.

<u>Burks v. Washington Mutual Bank, F.A.</u>, 2008 WL 4966656, at *8-9 (E.D. Mich. Nov. 17, 2008) (no FDCPA claim based on purportedly false statement that redemption period had expired because "there was neither a 'debt' nor a 'lien' for Trott to enforce at the time of the alleged violations in this case"). Therefore, the Court concludes that the remaining portion of Plaintiffs' FDCPA claim, which is based on the posting of the affidavit, must be dismissed.

## V.  CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss (Dkts. 14, 15). Plaintiffs' amended complaint is dismissed without prejudice. Plaintiffs may file a motion for leave to amend — with a proposed Amended Complaint attached (<u>see</u> E.D. Mich. Local Rule 15.1) — within 21 days of the date of this order. If Plaintiffs do not file a motion for leave to amend within this timeframe, then the dismissal of the claims listed above will be converted automatically into a dismissal with prejudice.

SO ORDERED.

Dated:  February 19, 2014                          s/Mark A. Goldsmith
     Flint, Michigan                            MARK A. GOLDSMITH
                                    United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 19, 2014.

                                           s/Deborah J. Goltz
                                         DEBORAH J. GOLTZ
                                         Case Manager