UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

TROY ETTS and LEA ETTS,

      Plaintiff,

v.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee for Securitized Asset
Backed Receivables LLC Trust 2004-NCI,
Pooling and Servicing Agreement Dated as of
April 1, 2004; and OCWEN LOAN SERVICING, LLC,

      Defendants.

Case No. 13-11588
Hon. Mark A. Goldsmith

_____/

| LEVEL ONE LEGAL SERVICES, P.C. | HERTZ SCHRAM PC |
|---|---|
| Kelli C. Meeks (P40748) | Deborah S. Lapin (P59027) |
| Attorney for Plaintiffs | Attorneys for Defendants Deutsche |
| 455 E. Eisenhower Parkway | Bank and Ocwen Loan Servicing, LLC |
| Suite 240 | 1760 S. Telegraph Road, Suite 300 |
| Ann Arbor, MI 48108 | Bloomfield Hills, MI 48302 |
| (734) 274-4329 | (248) 335-5000 |

_____/

## DEFENDANTS DEUTSCHE BANK AND OCWEN'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(C)

Defendants Deutsche Bank National Trust Company, as Trustee for Securitized Asset Backed Receivables, LLC Trust 2004-NC1, Pooling and Servicing Agreement Dated as of April 1, 2004 ("Deutsche Bank") and Ocwen Loan Servicing, LLC ("Ocwen") (collectively "Defendants"), by and through their undersigned counsel, submit this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c) and state as follows:

1.      The undersigned counsel certifies that counsel personally spoke to, or met with, opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

2.      For the reasons more fully stated in Defendants' Brief, summary judgment should be entered in favor of Defendants pursuant to Fed. R. Civ. P. 56(c) and Plaintiffs' claims should be dismissed with prejudice as a matter of law.

WHEREFORE, Defendants Deutsche Bank and Ocwen request that this Court enter summary judgment in their favor pursuant to Fed. R. Civ. P. 56(c), dismiss Plaintiffs' claims against Defendants with prejudice, award attorney fees and costs for having to defend in the matter and for any other relief as may be appropriate.

Respectfully submitted,

HERTZ SCHRAM PC

/s/ Deborah S. Lapin
Deborah S. Lapin (P59027)
Attorney for Deutsche Bank and Ocwen
Loan Servicing, LLC
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000
dlapin@hertzschram.com

Dated: January 15, 2016

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN

TROY ETTS and LEA ETTS,

      Plaintiff,

v.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee for Securitized Asset
Backed Receivables LLC Trust 2004-NCI,
Pooling and Servicing Agreement Dated as of
April 1, 2004; and OCWEN LOAN SERVICING, LLC,

      Defendants.

Case No. 13-11588
Hon. Mark A. Goldsmith

/

| LEVEL ONE LEGAL SERVICES, P.C. | HERTZ SCHRAM PC |
|---|---|
| Kelli C. Meeks (P40748) | Deborah S. Lapin (P59027) |
| Attorney for Plaintiffs | Attorneys for Defendants Deutsche |
| 455 E. Eisenhower Parkway, Suite 240 | Bank and Ocwen Loan Servicing, LLC |
| Ann Arbor, MI 48108 | 1760 S. Telegraph Road, Suite 300 |
| (734) 274-4329 | Bloomfield Hills, MI 48302 |
| | (248) 335-5000 |

/

## BRIEF IN SUPPORT OF DEFENDANTS DEUTSCHE BANK AND OCWEN'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(C)

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... ii

STATEMENT OF MATERIAL FACTS ............................................................. 1

STATEMENT OF ISSUES................................................................................... 9

CONTROLLING AUTHORITY ....................................................................... 10

ARGUMENT ..................................................................................................... 11

   I.     Legal Standard.................................................................................. 12

   II.    There Is No Genuine Issue Of Fact That Plaintiffs Have Failed To Establish A Claim For Promissory Estoppel.................................................................. 12

      A.   Elements of Promissory Estoppel.................................................... 12

      B.   There is no Genuine Issue of Fact Regarding Plaintiffs' Promissory Estoppel Claim .......................................................................................... 13

CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Mohnkern v Prof'l Ins Co*
542 F3d 157, 161 (6th Cir. 2008) ............................................................. 12

*Novak v Nationwide Mutual Insurance Company, et al*
235 Mich. App. 675, 686-87; 599 NW2d 546 (1999) .............................. 13

## Rules

Fed. R. Civ. P. 56(c) ...................................................... 1, 2, 10, 12, 15

## STATEMENT OF MATERIAL FACTS

1.     On or about November 26, 2003, Plaintiffs Lea and Troy Etts("Plaintiffs") borrowed $212,400.00 from New Century Mortgage Corporation ("New Century") and granted a mortgage encumbering the real property located at 2199 Oak Grove Dr., Temperance, Michigan 48182 (the "Property"). The mortgage was eventually assigned to Deutsche Bank (the "Deutsche Bank Mortgage").[1]

2.     The Deutsche Bank Mortgage is part of a Pooling and Servicing Agreement (the "PSA") dated December 1, 2004. Section 3.01(c) of the PSA provides that the servicer of the Deutsche Bank Mortgage may not modify the terms and conditions of the Deutsche Bank Mortgage loan.[2]

3.     On July 28, 2005, the PSA was amended (the "PSA Amendment") to permit the servicer of the Deutsche Bank Mortgage loan to modify the terms and conditions of the Deutsche Bank Mortgage Loan once.[3]

4.     In November 2006, Plaintiffs and Deutsche Bank agreed to modify the Deutsche Bank Mortgage loan terms (the "Loan Modification").[4]

---

[1] **Exhibit 1** – the Deutsche Bank Mortgage; **Exhibit 2** – Assignment.
[2] **Exhibit 3**, PSA, p. 49.
[3] **Exhibit 4**, p. 3.
[4] **Exhibit 5** – Loan Modification.

1

5.      On January 12, 2011 and June 2, 2011, the then current servicer of the Deutsche Bank Mortgage loan, Litton Loan Servicing, LP ("Litton") advised Plaintiffs that the PSA did not permit a second loan modification.[5]

6.      Ocwen began servicing the Deutsche Bank Mortgage loan in August 2011.[6]

7.      Plaintiffs last made a loan payment in April of May of 2011.[7]

8.      In August 2012, the foreclosure sale for the Deutsche Bank Mortgage was scheduled for September 6, 2012.[8]

9. On August 31, 2012, Plaintiff Lea Etts contacted Money Management International ("MMI"), an entity that provides debt counseling and foreclosure prevention services.[9]

10. On August 31, 2012, Plaintiff Lea Etts participated in a conference call with MMI and Ocwen representatives to request that the foreclosure sale not proceed on September 6, 2012.  During the call, Plaintiff Lea Etts requested that Ocwen email her a Home Affordable Loan/HAMP package.[10]

---

[5] **Exhibit 6** – January 12, 2011 and June 2, 2011 correspondence from Litton to Plaintiffs.
[6] **Exhibit 7** – deposition transcript of Ocwen representative Sandra Lyew ("Lyew"), p. 17.
[7] **Exhibit 8** – deposition transcript of Lea Etts, p. 17.
[8] **Exhibit 9** - Ocwen Loan Comments, August 2, 2012.
[9] **Exhibit 10** – documents from MMI website.
[10] **Exhibit 8**, pgs. 27 – 28; **Exhibit 9**, August 31, 2012; **Exhibit 11** – MMI notes.

11.  Ocwen emailed Plaintiff Lea Etts a Home Affordable Loan/HAMP Package on September 1, 2012.[11]

12.  The Home Affordable Loan/HAMP Package that Ocwen emailed to Lea Etts on September 1, 2012 was a standard package that would not have been sent to Plaintiffs but for the August 31, 2012 conference call.[12]

13.  Plaintiff Lea Etts' understanding of the result of the telephone conference on August 31, 2012 was that she and her husband would be reviewed for a loan modification.[13]

14.  Plaintiff Lea Etts' interpretation of Ocwen's September 1, 2012 email was that she and her husband would be reviewed for a loan modification and that no foreclosure sale would occur during the review process.[14]

15.  Plaintiffs knew that the September 1, 2012 email from Ocwen did not guaranty that they would get a loan modification, only that they would be reviewed for a loan modification.[15]

16.  On September 4, 2012, Ocwen received Plaintiffs' completed Home Affordable Loan/HAMP Package and postponed the foreclosure sale scheduled for September 6, 2012.[16]

---

[11] **Exhibit 7**, pgs. 24 - 25; **Exhibit 12** – Ocwen September 1, 2012 email with Home Affordable Loan/HAMP Package to Plaintiff Lea Etts.
[12] **Exhibit 7**, p. 58.
[13] **Exhibit 8**, p. 33.
[14] **Exhibit 8**, p. 35.
[15] **Exhibit 8**, p. 52.

3

17. On September 4, 2012, MMI contacted the federal Making Home Affordable program ("MHA") regarding the Plaintiffs' situation.[17]

18. On September 4, 2012, Ocwen's escalated case management department received an email request from the MHA requesting that Ocwen advise whether the Plaintiffs were reviewed for a HAMP modification prior to commencing foreclosure proceedings, the outcome of any HAMP review and whether there were any foreclosure alternatives available to the Plaintiffs.[18]

19. On September 4, 2012, Ocwen mailed the Plaintiffs a letter confirming receipt of their request in the escalated case management department and advising that a review would be completed no later than October 4, 2012.[19]

20. On September 4, 2012, Ocwen's escalated case management department determined that the Plaintiffs were not eligible for a HAMP modification or other loan modification because of the investor guidelines in the PSA and PSA Amendment which permit only one loan modification and because the Plaintiffs received the Loan Modification in 2006.[20]

---

[16] **Exhibit 7**, pgs. 26 - 27; **Exhibit 9**, September 4, 2012.
[17] **Exhibit 11**, September 4, 2012.
[18] **Exhibit 9**, September 4, 2012; **Exhibit 13** – September 4, 2012 email from MHAHelpEscalations to Ocwen.
[19] **Exhibit 9**, September 4, 2012; **Exhibit 14** – September 4, 2012 letter from Ocwen's escalated case management department to Plaintiffs.
[20] **Exhibit 9**, September 4, 2012; **Exhibit 5**.

21. On September 4, 2012, Ocwen's escalated case management department completed the MHA Servicer Resolution Form (the "Resolution Form") and emailed it to the MHA. The Resolution Form indicates that the foreclosure sale was postponed, that Plaintiffs are not eligible to reapply for HAMP based on the PSA and Loan Modification, and that the Plaintiffs could apply for a short sale or a deed in lieu of foreclosure by contacting Ocwen's home retention department.[21]

22. On September 4, 2012, a representative of MMI spoke with Plaintiffs and advised that MMI received the Resolution Form and that the foreclosure sale was postponed.[22]

23. On September 5, 2012, Ocwen advised Plaintiffs that their documentation was reviewed and that they were not eligible for a modification under the MHA program or HAMP based on the guidelines of the owner of the Deutsche Bank Mortgage loan (the "HAMP Letter").[23]

24. On September 5, 2012, Ocwen advised Plaintiffs that they were not eligible for non-HAMP loan modifications because the owner of the Deutsche Bank Mortgage loan does not allow loan modifications (the "Non-HAMP letter").[24]

25. On September 5, 2012, Ocwen adjourned the foreclosure sale to October

---

[21] **Exhibit 15** – Ocwen September 4, 2012 email to MHA with Resolution Form.
[22] **Exhibit 11**, September 4, 2012.
[23] **Exhibit 9**, September 5, 2012; **Exhibit 16** – the HAMP Letter.
[24] **Exhibit 9**, September 5, 2012; **Exhibit 17** – the Non-HAMP letter.

11, 2012.[25]

26. On September 14, 2012, a representative of MMI reviewed the PSA and other documents and determined that the investor's restriction regarding one loan modification was valid.[26]

27. On September 17, 2012, MMI and Ocwen were notified by email from the HAMP Solution Center that investor restrictions were verified and that the Deutsche Bank Mortgage loan could not be modified under HAMP.  The email further indicated that the next step for the homeowner would be to apply for a short sale or deed in lieu by contacting Ocwen's home retention department.[27]

28. On September 18, 2012, Ocwen's escalated case management department sent correspondence to the Plaintiffs advising that after a full review of the Deutsche Bank Mortgage loan, the Deutsche Bank Mortgage loan could not be modified under HAMP or other alternative modifications and that the next step would be for Plaintiffs to apply for a short sale or deed in lieu of foreclosure by contacting Ocwen's home retention department.[28]

---

[25] **Exhibit 9**, September 5, 2012.
[26] **Exhibit 11**, September 14, 2012.
[27] **Exhibit 9**, September 17, 2012; **Exhibit 11**, September 17, 2012; **Exhibit 18** – September 17, 2012 HAMP Solution Center email.
[28] **Exhibit 9**, September 18, 2012; **Exhibit 19** – September 18, 2012 Ocwen correspondence to Plaintiffs.

29.   MMI's notes indicate that an MMI representative spoke with Plaintiffs on September 18, 2012 and that the case and resolution were discussed and that MMI considered the case resolved.[29]

30. On September 27, 2012, the foreclosure sale was set for October 25, 2012.[30]

31. The foreclosure sale was held on October 25, 2012 and Deutsche Bank was the highest bidder with a credit bid of $257,502.80.[31]

32. On April 25, 2013, the applicable redemption period expired pursuant to MCL 600.3240 and Plaintiffs failed to redeem the Property because they lacked the funds to do so.[32]

33. Subsequent to September 1, 2012, Ocwen never advised Plaintiffs that they satisfied all of the eligibility requirements for a loan modification.[33]

34.   Plaintiffs testified that they have no evidence or any written documentation that indicates that Ocwen failed to consider their loan modification request in September 2012.[34]

35. Between September 1, 2012 and October 25, 2012, Plaintiffs did not attempt to refinance the Property.[35]

---

[29] **Exhibit 11**, September 18, 2012.
[30] **Exhibit 9**, September 27, 2012.
[31] **Exhibit 20** – Sheriff's Deed.
[32] **Exhibit 8**, pgs. 47, 48.
[33] **Exhibit 8**, pgs. 40, 41.
[34] **Exhibit 8**, p. 41.

7

36. Plaintiffs cannot explain how Ocwen's September 1, 2012 email prevented them from obtaining a loan refinance.[36]

37. Plaintiffs have no evidence that they would have qualified for a loan refinance between January 1, 2012 and the time that this lawsuit was filed.[37]

38. Plaintiffs never spoke to a realtor about a short sale of the Property or considered a short sale of the Property from 2009 through the time that this lawsuit was filed.[38]

39. Plaintiffs cannot explain how the September 1, 2012 email from Ocwen that indicated that they would be reviewed for, but not guaranteed, a loan modification prevented them from filing for bankruptcy.[39]

40. Plaintiffs cannot explain how the September 1, 2012 email from Ocwen that indicated that they would be reviewed for, but not guaranteed, a loan modification prevented them from relocating or renting the Property.[40]

---

[35] **Exhibit 8**, pgs. 51 – 52.
[36] **Exhibit 8**, pgs. 51 – 52.
[37] **Exhibit 8**, p. 52.
[38] **Exhibit 8**, p. 53.
[39] **Exhibit 8**, p. 54.
[40] **Exhibit 8**, p. 56.

## STATEMENT OF ISSUES

I.   Are Defendants entitled to summary judgment because Plaintiffs have failed to factually establish a claim for promissory estoppel?

Defendants Deutsche Bank and Ocwen answer: Yes.

## CONTROLLING AUTHORITY

Defendants rely upon Fed. R. Civ. P. 56(c) and the authority contained in their Brief in Support.

**ARGUMENT**

Plaintiffs' have failed to factually establish their claim for promissory estoppel based upon Ocwen's September 1, 2012 email.[41] The September 1, 2012 email does not guaranty that Plaintiffs will receive a loan modification; rather, it is a promise to *review* Plaintiffs for a loan modification and not to foreclose during the review process.[42]

Ocwen delivered precisely what it promised. It is indisputable that Ocwen reviewed Plaintiffs' application and determined that Plaintiffs were not eligible for any type of loan modification because of investor restrictions.[43] It is also indisputable that upon receipt of Plaintiffs' completed Home Affordable Loan/HAMP Package on October 4, 2012, Ocwen adjourned the foreclosure sale scheduled for September 6, 2012.[44]

Because Plaintiffs cannot establish that Ocwen failed to promise exactly what it agreed to do, Plaintiffs could not have relied on the promise to their detriment. Because the promise to review for a loan modification and not to foreclose during the loan modification review process was adhered to, the promise did not cause Plaintiffs to forego or take any action. Even assuming for the sake of

---

[41] **Exhibit 12.**

[42] *Id.*

[43] **Exhibit 9**, September 4 and September 18, 2012 and **Exhibits 16, 17** and **19**.

[44] **Exhibit 9**, September 24, 2012. Ocwen actually postponed the foreclosure sale twice: from September 6, 2012 to October 11, 2012 and then from October 11, 2012 to October 25, 2012.

11

argument that Ocwen did not comply with its promise in the September 1, 2012 email, Plaintiffs have also failed to establish how the September 1, 2012 email prevented them from taking or refraining from any actions specified in their Second Amended Complaint.

## I.    Legal Standard

In *Mohnkern v Prof'l Ins Co*, 542 F3d 157, 161 (6th Cir. 2008), the court stated, "summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as matter of law." Fed. Fed. R. Civ. P. 56(c).

## II.    There Is No Genuine Issue Of Fact That Plaintiffs Have Failed To Establish A Claim For Promissory Estoppel.

In the Court's Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, the Court determined that Plaintiffs' Second Amended Complaint failed to state a claim for promissory estoppel based upon a purported failure to consider Plaintiffs' financial eligibility for a loan modification.[45]  Thus, Plaintiffs' promissory estoppel claim is based solely on the September 1, 2012 promise to adjourn the foreclosure sale pending a review of Plaintiffs' request for a loan modification.[46]

### A. Elements of Promissory Estoppel

---

[45] Dkt. #61, pgs. 14, 16 – 17, 18.
[46] Dkt. #61, pgs. 30, 32.

12

The elements of promissory estoppel are: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promissee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v Nationwide Mutual Insurance Company, et al,* 235 Mich. App. 675, 686-87; 599 NW2d 546 (1999).

### B. There is no Genuine Issue of Fact Regarding Plaintiffs' Promissory Estoppel Claim

The undisputed facts regarding Plaintiffs' promissory estoppel claim are:

- In September 2012, Plaintiffs knew that prior requests for loan modification consideration subsequent to 2006 had been denied due to investor restrictions;[47]
- Plaintiffs knew that the September 1, 2012 email from Ocwen did not guaranty a loan modification and only promised that a loan modification review would occur and that the foreclosure sale would not proceed during the loan modification review process;[48]
- Ocwen postponed the foreclosure sale on September 4, 2012 and again on September 27, 2012;[49]
- Plaintiffs learned from MMI on September 4, 2012 that the September 6, 2012 foreclosure sale was postponed;[50]
- Ocwen reviewed Plaintiffs' completed Home Affordable Loan/HAMP Package and determined that Plaintiffs were not eligible for a HAMP or other type of loan modification;[51]
- Ocwen advised Plaintiffs on September 5, 2012 and September 18, 2012 that they were not eligible for a HAMP loan modification or any other type of loan modification;[52]

---

[47] **Exhibit 6.**
[48] **Exhibit 8**, pgs. 33, 52.
[49] **Exhibit 9**, September 4, 2012 and September 27, 2012.
[50] **Exhibit 11**, September 4, 2012.
[51] **Exhibit 9**, September 4, 2012.

- Ocwen's loan modification review occurred well before the foreclosure sale occurred; thus, Ocwen did not foreclose during the loan review process;[53]
- Plaintiffs failed to redeem the Property due to lack of funds;[54]
- Plaintiffs did not attempt to refinance the Property between September 1, 2012 and October 25, 2012 and have no evidence that they would have qualified for a refinance;[55]
- Plaintiffs never spoke to a realtor about a short sale or considered a short sale prior to October 25, 2012;[56] and
- Plaintiffs cannot explain how the September 1, 2012 email prevented them from seeking bankruptcy protection or renting the Property and relocating.[57]

Plaintiffs' theory that Ocwen foreclosed during the loan review process lacks a factual basis. Plaintiffs cannot establish promissory estoppel based upon a fulfilled promise as one cannot rely on a fulfilled promise to one's detriment.

Even assuming that the foreclosure sale had occurred during the loan modification review process, which is clearly not the case, Plaintiffs have not established any cognizable damages when they never sought a refinance, filed for bankruptcy or attempted to rent the Property and relocate. Plaintiffs' obtained a 30+ day adjournment of the foreclosure sale. Yet, Plaintiffs failed to redeem, and elected not to avail themselves of Ocwen's offer to discuss a short sale or deed in lieu of foreclosure.

---

[52] **Exhibit 9**, September 5, 2012 and September 18, 2012; **Exhibits 16, 17** and **19**.
[53] *Id.*; **Exhibit 20.**
[54] **Exhibit 8**, pgs. 47, 48.
[55] **Exhibit 8**, pgs. 51 – 52.
[56] **Exhibit 8**, p. 53.
[57] **Exhibit 8**, pgs. 54 and 56.

There are no facts to establish Plaintiffs' promissory estoppel claim and as such, no injustice resulted from Ocwen's actions as Ocwen did exactly what it said it would do.   Plaintiffs' actions or inactions between September 1, 2012 and October 25, 2012 have nothing to do with anything that Ocwen communicated to Plaintiffs or to Plaintiffs' representatives.   Summary judgment should be granted in favor of Defendants.

## CONCLUSION

Defendants Deutsche Bank and Ocwen respectfully request that this Court grant their Motion for Summary Judgment and enter judgment in their favor and against Plaintiffs pursuant to Fed. R. Civ. P. 56(c).

Respectfully submitted,

HERTZ SCHRAM PC

/s/ Deborah S. Lapin
Deborah S. Lapin (P59027)
Attorney for Deutsche Bank and
Ocwen Loan Servicing, LLC
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 335-5000
dlapin@hertzschram.com

Dated: January 15, 2016

15

## **PROOF OF SERVICE**

The undersigned certifies that on January 15, 2016, the foregoing was electronically filed and served using the Court's ECF filing system which will send notice of such filing via email to all counsel of record and that a copy of the papers was served by first class mail upon all non-electronic filing parties.

/s/ Laura Baumhardt
Laura Baumhardt
Legal Assistant